# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-2V

|  |  |
|---|---|
| JACOB SCHRINER,<br><br>     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br><br>Filed: June 11, 2025 |

*Howard S. Gold, Gold Law Firm, LLC, Wellesley, MA, for Petitioner.*

*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM[1]

On January 4, 2021, Jacob Schriner filed a Petition under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he received an influenza ("flu") vaccine on October 10, 2018, and subsequently suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury. Petition at 1,4.

Respondent has challenged both the adequacy of proof of vaccination, and Petitioner's success more broadly at establishing the elements of a SIRVA Table claim.

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I hereby find that Petitioner's onset of symptoms occurred outside the Table requirement, which prevents Petitioner from bringing a successful SIRVA Table claim. Therefore, Petitioner's Table claim is dismissed.

## I.    Procedural History

As noted above, this matter was filed over four years ago, and assigned to the "Special Processing Unit" (the "SPU"), since it alleged a Table claim that likely could be resolved expeditiously. But the case took more than a year to pass through "pre-assignment review" before being activated in March 2022—and even after that, the case became mired in the filing of additional documents for more than another year.

By 2023, however, the parties began to explore settlement of the claim, but were unable to do so. And Respondent voiced several objections to the claim's satisfaction of the SIRVA elements—prompting Petitioner to seek to amend the Petition to state an off-Table claim as well. *See* Motion to Amend Petition, dated October 7, 2024 (ECF No. 51). I thereafter held a status conference in the matter, and directed the parties to brief their dispute in order to break the case's logjam. To that end, both have offered competing filings. *See* Respondent's Rule 4(c) Report and Motion for Ruling on Record, dated April 1, 2025 (ECF No. 49) ("Mot."); Petitioner's Response, dated April 10, 2025 (ECF No. 52) "(Opp.")."

## II.    Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I base my findings on the following evidence:

Petitioner (then 29 years old) alleges that he received a flu vaccine in his left shoulder on October 10, 2018. Although he was unable to file direct proof of vaccine administration, he has offered several pieces of circumstantial proof—including an Explanation of Benefits from his insurer Aetna, with a statement date of January 31, 2019. Ex. 13 (uncertified version); Ex. 14 (certified version). The document suggests a flu vaccine administered on October 10, 2018 was billed to his insurance plan. *Id*. And a declaration prepared by a vaccination provider that contracted at the time with Petitioner's employer has confirmed that it was offering vaccinations at this time, and that the relevant insurance statements reliably confirm that Petitioner's contention is accurate. *See generally* Ex. 15 (Declaration of Hassan Gholi, dated Apr. 1, 2025) (ECF No. 50-1).

On November 15, 2018 (over one month post-vaccination), Petitioner went to his primary care provider ("PCP") and reported left shoulder pain. Ex. 8 at 70–71. But he also noted at this time that it had begun *two weeks before*—meaning more than two days post-vaccination. *Id.* He also mentioned a history of lower back pain from a car accident in 2017. *Id.* at 70. Examination indicated full passive range of motion ("ROM"), positive impingement, rotator cuff pain, and soreness and stiffness over the trapezius muscle. *Id.* at 71. And the treater who saw him opined his pain was likely the product of poor posture and/or sequelae from the automobile accident, proposing physical therapy ("PT") as a solution. *Id;* Ex. 4 at 8.

At a PT evaluation held at the end of November 2018, Petitioner mentioned the flu vaccine for the first time as possibly causal. Ex. 4 at 52. Yet he also again identified an onset two or three weeks after vaccination. *Id.* ("Notes: Pt reports onset of intense shoulder pain about 3-4 weeks ago without MOI or reason of onset"). And then, at a follow-up visit to his PCP, the treating nurse practitioner discounted the possibility of a vaccine cause, since his onset had begun at least a week post-vaccination, making his circumstances distinguishable from a SIRVA. Ex. 8 at 69.

Petitioner thereafter pursued PT into mid-January, although his condition made it impossible for him to complete it. Ex. 8 at 36–38. An MRI performed around this time revealed no rotator cuff tear but some evidence of bursitis. Ex. 3 at 53. He was also referred to orthopedics. Ex. 8 at 38. He was, however, thereafter referred to an orthopedist, seeing the treater in January 2019. Ex. 3 at 14. He now reported that "approximately 2-1/2 months ago he had a flu shot and *after that* developed severe pain, and stiffness in the left arm." *Id.* (emphasis added). He also complained of pain radiating down his arm into the fingers. *Id.* Petitioner was assessed with left adhesive capsulitis and possible bursitis, and received a steroid injection. *Id.* at 15.

Petitioner continued to seek treatment in the first half of 2019 for his shoulder pain and related concerns. He again, however (this time in May 2019, at an orthopedic follow-up visit) reported onset after vaccination. Ex. 3 at 17 (onset in two weeks of vaccination). He reported even later onsets to others. *See, e.g.*, Ex. 5 at 34–35 (May 21, 2019 PCP visit, at which time symptoms were recorded to have begun in December 2018). He also, however, contradictorily informed treaters of an onset closer-in-time to vaccination. *See, e.g.*, Ex. 5 at 12 (May 24, 2019 orthopedic re-evaluation).

The records filed in this case reveal further efforts by Petitioner throughout 2019 to address shoulder pain, along with gaps in treatment (one of which lasted from late 2020 to 2020—after this case was filed). Ex. 9 at 42–126. Ultimately, Petitioner underwent surgery to repair a left shoulder superior labral tear in 2023, with follow-up PT after this—

but all such evidence largely does not pertain to the questions to be decided at this time. *Id.* at 5–41.

### III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *19–20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. Apr. 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203–04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y*

4

*of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

**ANALYSIS**

## I.      Proof of Vaccination.

As a threshold matter, any successful Vaccine Act claim must include preponderant proof of "recei[pt of] a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10).

When presented with preponderant evidence—such as consistent references in contemporaneously created medical records and/or credible witness testimony—special masters have found sufficient proof of vaccination even in cases lacking a written contemporaneous record memorializing the event.[3] However, evidence has found to be

---

[3] *See, e.g.*, *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10–11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018), *mot. for rev. den'd*, 2023 WL 3815047 (Fed. Cl. 2023), *aff'd*, 2025 WL 763153 (Fed. Cir. 2025); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3–4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007).

insufficient in cases involving inconsistencies related to Petitioner's vaccination status and the events surrounding vaccination.[4]

Here, the records preponderate in favor of a finding that Petitioner likely received a flu vaccine on October 10, 2018. Despite the lack of a specific vaccine record, Petitioner has offered sufficient circumstantial evidence (the insurance proof plus a declaration from the person then responsible for administration in association with Petitioner's employer) to establish the fact of vaccination. *See* Ex. 13 (uncertified version); Ex. 14 (certified version); Ex. 15. And this evidence is corroborated by Petitioner's numerous subsequent statements to treaters that the vaccination occurred in October 2018, as alleged. *See, e.g.*, Ex. 4 at 52; Ex. 8 at 69.

**Onset.** A Table SIRVA also requires the onset of new shoulder pain within 48 hours after vaccination. 42 C.F.R. §§ 100.3(a)(I)(C), (c)(10)(ii). But this important Table element has clearly *not* been satisfied. I am not persuaded by Respondent's arguments about the significance of delays in treatment, since they do not prevent a finding of Table onset *per se.* But what is persuasive is the fact that the earliest records of Petitioner's efforts to treat his shoulder issues contain affirmative statements that onset occurred well outside of the 48-hour period applicable to a Table SIRVA, or opinions from treaters that the onset was too long after vaccination to meet the SIRVA definition. *See, e.g.*, Ex. 8 at 70 (November 15, 2018 treatment visit); Ex. 4 at 53 (November 29, 2018 visit); Ex. 8 at 69 (December 13, 2018 visit); Ex. 3 at 17 (May 13, 2019 orthopedic visit).

Admittedly, Petitioner on other occasions in 2019 and thereafter has reported a more timely onset. But I give far greater weight to the first records in which he sought treatment. And those from the fall of 2018 are inconsistent with a 48-hour onset. For this reason, the Table claim fails.

## Conclusion

Petitioner has proposed to amend his Petition to assert a non-Table claim. *See* Motion, dated Apr. 9, 2025 (ECF No. 51). I find that a non-Table claim arising out of the facts of this case could be tenable, and therefore the case may properly proceed out of SPU.

---

[4] *See, e.g.*, *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6–7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021) *aff'd* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

ACCORDINGLY,

- **Petitioner's Table SIRVA claim is dismissed;**

- **Petitioner's Motion to Amend the Petition to assert a causation-in-fact claim is granted; and**

- **Pursuant to Vaccine Rule 3(d), the above-captioned case is hereby transferred out of SPU and reassigned randomly to a Special Master by the Clerk's Office. Further proceedings may be determined by the next special master assigned to the case.**

**IT IS SO ORDERED.**                    <u>**s/Brian H. Corcoran**</u>
                                          Brian H. Corcoran
                                          Chief Special Master